UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WESTERN MASSACHUSETTS          )
ELECTRIC COMPANY,              )
                               )
            Plaintiff,         )    CIVIL ACTION NO.
                               )    11-30106-DPW
v.                             )
                               )
INTERNATIONAL BROTHERHOOD      )
OF ELECTRICAL WORKERS,         )
LOCAL 455,                     )
                               )
            Defendant.         )
                               )

MEMORANDUM AND ORDER
September 27, 2012

Western Massachusetts Electric Company ("WME") filed this action against the International Brotherhood of Electrical Workers, Local 455 ("Local 455"), seeking to vacate an arbitration award in favor of Local 455, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*  Local 455 has filed a cross-motion seeking to have the award, which does not assess damages or require some remedial action but rather expresses an interpretation of the Collective Bargaining Agreement ("CBA"), remain in place.  I will deny WME's motion for summary judgment, and grant that of Local 455.  Local 455 has also moved for its attorneys' fees, claiming that WME's case was frivolous because it was clearly outside the thirty day statute of limitations.  I will deny that motion because Local 455 has failed to provide adequate submissions supporting a claim to a specific dollar figure.

# I.   BACKGROUND[1]

## A.   The Parties

WME is a public utility company which distributes electricity in western Massachusetts.  It is part of the Northeast Utilities system that covers Connecticut, New Hampshire, and western Massachusetts.  Occasionally, WME employees travel to other utility companies within the Northeast Utilities system for training programs, job recertification, and to pick up parts, with the express consent of Local 455.  Local 455 is a labor union comprised of electrical workers, and represents workers employed by WME.

## B.   The Facts

### 1.   Collective Bargaining Agreement

From October 1, 2004 through October 1, 2010, WME and Local 455 were parties to a collective bargaining agreement.  Sections IV and XVI of the CBA are relevant here.

Section IV is titled "Pledge of Union and Employer." Subsections (e) and (f) state, in relevant part:

> (e) The Union agrees, for itself and the employees, not to hinder or interfere with the management of the Employer in its several departments, including the assignment of work, the direction of working forces . . . .
> (f) Nothing in paragraph (e) shall be held to be paramount to any other provision in this agreement which may be claimed to be in conflict with it, but all

---

[1] The facts are not in dispute, so I briefly recount the facts here as the arbitrator reported them.

parts of this agreement shall be held to be of equal importance and shall be subject equally to the provisions of Section XVI hereof.

Section XVI outlines the four-step grievance procedure and arbitration rules under the CBA.  Subsection (b) describes the scope of what may be arbitrated under the CBA:

> (b) During the term of this agreement, should *any difference, dispute or grievance arise* between the Employer and the Union regarding hours, wages, or working conditions or the interpretation or application of any of the provisions of the Agreement, there shall be no suspension of work and the following procedure shall be followed . . . .

Subsection (b) then proceeds to lay out the four-step process for dispute resolution under the CBA.  Step four provides that "[i]n the event that any such difference, dispute, or grievance shall not have been satisfactorily settled in the manner hereinbefore provided . . . the Union shall immediately notify the Employer, in writing, that the same shall be referred for settlement to an impartial arbitrator . . . ."

2.  *March 2010 Storm*

In March 2010, a storm caused widespread power outages in Connecticut, which is serviced by Connecticut Light & Power, a member of the Northeast Utilities system.  To deal with the emergency, Connecticut Light & Power requested additional crews from other members of the Northeast Utilities system to come to Connecticut to help restore power.  WME initially sought volunteers to take the work, but when too few came forward to

meet the need, WME informed employees that if no one else volunteered, it would have to force two employees to go to Connecticut to help.  When Local 455 learned of this, it objected to WME's assertion of authority to force employees to go work in Connecticut without the union's consent.

The parties agreed to skip the first three steps of the dispute resolution process contained in Section XVI of the CBA, and went straight to arbitration under step four.  Shortly after the parties agreed to go to arbitration, but before the arbitration occurred, a sufficient number of WME employees - after learning that they would be paid double wages for their time - volunteered to go to Connecticut.  Consequently, WME did not force any employee to go to Connecticut.

C.   The Arbitration

   1.   *The Parties' Positions*

At the arbitration, two Local 455 officials and a WME representative testified.  The Local 455 officials testified that in the past, WME and Local 455 had negotiated over employees working in different districts within WME's operating area, and at other utilities companies in the Northeast Utilities system.

Local 455 argued that WME violated the CBA and its past practices by announcing that it would force employees to work for Connecticut Power & Light during the storm emergency in March 2010 if too-few volunteers were found.  It contended that WME

4

could not act unilaterally in such instances, and must, as it had done in the past, negotiate with Local 455 before assigning employees to out-of-district work.

WME argued that the arbitration was moot, because WME ultimately did not require any employees to go to Connecticut during the March 2010 storm emergency.  An opinion by the arbitrator, WME argued, would therefore be an impermissible advisory opinion because the CBA does not provide for such opinions.

WME also argued that Section IV(e) of the CBA gave it wide latitude in the way in which it decided to assign work and direct its employees.  In this connection, it highlighted the longstanding practice of sending employees to Connecticut for other job functions, like training, recertifications, and to pick up parts.  If day-to-day job functions allowed WME to send employees out of state, WME argued, then in an emergency it should be allowed to send employees out of state to address the emergency as well.

### 2.   *The Arbitrator's Decision*

On January 28, 2011, Arbitrator Altman rendered his decision and award in favor of Local 455.  First, addressing WME's argument that the case was moot, the arbitrator noted that the case was not moot because the dispute was one that could readily recur.  He observed that the parties had a continuing collective

bargaining relationship, storms are not an infrequent occurrence, and because both sides thought they were correct, there remained a live dispute whether the CBA allowed WME to make unilateral assignments out of WME's coverage area.

Second, the arbitrator noted that although WME employees had gone to Connecticut for training, recertifications, and to pick up parts as a part of their normal job functions, those assignments were pre-negotiated with and approved by Local 455. The fact that they were pre-negotiated made them unlike the unilateral decision by WME as to emergency staffing at issue in this case.

Finally, the arbitrator looked to another arbitration between the parties decided by Arbitrator Cochran for the proposition that a past-practice becomes equivalent to a written term of the CBA that cannot be modified unilaterally by WME. Incorporating by reference Arbitrator Cochran's analysis, the arbitrator sustained Local 455's grievance but did not award any remedy.  Local 455 opposed and filed a cross motion to confirm the award.  It also moved for its attorneys' fees expanded responding to WME's complaint.

   *3.   The Challenge to the Arbitrator's Decision*

WME filed this action seeking to vacate the arbitrator's award on April 27, 2011, nearly ninety-days after the award was delivered.  Local 455 opposed and filed a cross motion to confirm

the award.  It also moved for its attorneys' fees expanded responding to WME's complaint.

## II.  STANDARD OF REVIEW

### A.  Summary Judgment

A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party," and "[a] fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch.* v. *RNK, Inc.,* 632 F.3d 777, 782 (1st Cir. 2011) (citation omitted).  However, "conclusory allegations, improbable inferences, and unsupported speculation" are insufficient to create a genuine issue of material fact to survive summary judgment.  *Sullivan* v. *City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009) (quotation and citation omitted).

I "view the facts in the light most favorable to the party opposing summary judgment."  *Rivera-Colón* v. *Mills,* 635 F.3d 9, 10 (1st Cir. 2011).  Because I am addressing cross-motions for summary judgment, I "must view each motion, separately, through this prism."  *Estate of Hevia* v. *Portrio Corp.,* 602 F.3d 34, 40 (1st Cir. 2010).

7

B.   <u>Labor Arbitration Awards</u>

When the parties agree to submit a dispute to binding arbitration, "it is the arbitrator's view of the facts and of the meaning of the [collective bargaining agreement] that they have agreed to accept." *United Paperworkers Int'l Union, AFL-CIO* v. *Misco, Inc.*, 484 U.S. 29, 37-38 (1987).  As a result, "the district court's review of arbitral awards must be extremely narrow and exceedingly deferential." *UMass Mem'l Med. Ctr., Inc.* v. *United Food & Commercial Workers Union, Local 1445*, 527 F.3d 1, 5 (1st Cir. 2008) (quotation and citation omitted).  The task of a court "is to determine whether the arbitrator exceeded his authority by failing to apply the contract in a plausible manner." *Salem Hosp.* v. *Mass. Nurses Ass'n*, 449 F.3d 234, 238 (1st Cir. 2006) (quotation omitted).  Thus, the mere fact "that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision," so "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers*, 484 U.S. at 38.

However, a court is "not required to give an arbitrator 'carte blanche approval' for every decision." *Asociación de Empleados del Estado Libre Asociado de P.R.* v. *Unión Internacional de Trabajadores de la Industria de Automoviles*, 559 F.3d 44, 47 (1st Cir. 2009) (quotation omitted).  There are two

sets of circumstances in which a court may overturn an arbitral award.

The first, authorized under § 10(a) of the Federal Arbitration Act, allows a court to vacate an arbitration award "in cases of specified misconduct or misbehavior on the arbitrators' part, actions in excess of arbitral powers, or failures to consummate the award." *UMass*, 527 F.3d at 6 (quotation and citation omitted). Second, under federal common law, a court can also vacate an arbitration award when either the award "contravenes the plain language of the applicable contract," or the arbitrator "disregards applicable law." *Id.* (quotation and citation omitted). That is, the arbitration award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers*, 484 U.S. at 38.

### III. DISCUSSION

WME challenges the arbitrator's award on two grounds. First, it contends that the dispute was moot before the arbitrator decided the case, and therefore that the arbitrator had no power to issue what WME characterized as an advisory opinion. Second, it alleges that the arbitrator exceeded his authority under the CBA. Local 455, in turn, claims that WME filed its complaint in this case outside of the statute of limitations and consequently cannot receive any relief. On the

merits, Local 455 argues that the arbitrator's decision should be confirmed under the highly deferential standard of review for arbitration awards.

I turn first to the question of the statute of limitations applicable to efforts to vacate an arbitration award before turning to the merits.

A.   Statute of Limitations

Local 455 argues that WME failed to file its application to vacate the arbitrator's award within the statute of limitations, which it contends is thirty days, and therefore that the application to vacate should be dismissed.  The threshold question in determining what statute of limitations is applicable.

1.   *Which Statute Governs?*

Federal actions concerning collective bargaining agreements are governed by § 301 of the Labor Management Relations Act ("LMRA").  The LMRA does not contain a statute of limitations; courts applying § 301 have adopted the analogous state statute of limitations for actions to vacate an arbitrator's award.  Here, Local 455 seeks to have me apply the thirty-day statute of limitations from Massachusetts General Laws chapter 150C, § 11(b).  If I do, WME's action would be untimely.

WME contends that the ninety-day statute of limitations from the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, should

apply, in which case WME's application would be timely.   WME
notes that it brought its application to this court under both
§ 301 and the FAA.   Thus, WME contends, I can apply the FAA
statute of limitations, and if I do, WME's action would be
timely.

WME is incorrect.   Courts have recognized that § 301 takes
precedence over the FAA where conflicts between the two may
exist.   *See, e.g.*, *Smart* v. *Int'l Bhd. of Elec. Workers, Local
702*, 315 F.3d 721, 724 (7th Cir. 2002) ("Section 301 is of course
more than a jurisdictional and procedural statute; the Supreme
Court has held that it is a directive to the courts to create a
federal common law of collective bargaining contracts.   The
Federal Arbitration Act has no particular reference to such
contracts and so if there were a conflict between the two
statutes we would resolve it in favor of Section 301.").   Thus,
in the collective bargaining context between employers and
unions, § 301, not the FAA, provides the jurisdictional hook.
*See Providence Journal Co.* v. *Providence Newspaper Guild*, 271
F.3d 16, 18-19 n.1 (1st Cir. 2001) (observing that where a labor
plaintiff brought its case to vacate an arbitration award under
the FAA, "jurisdiction actually exists under § 301 of the Labor
Management Relations Act, 29 U.S.C. § 185"); *W.S.B. & Assocs.* v.
*Serv. Emps. Int'l Union*, No. C 08-05266 WDB, 2009 WL 2969464, at
*4 (N.D. Cal. Sept. 14, 2009) ("Petitioner alleges, erroneously,

that the Federal Arbitration Act . . . and the California
Arbitration Act . . . provide additional bases for jurisdiction.
Neither the Federal Arbitration Act, nor state law, governs
judicial review of arbitration awards involving collective
bargaining agreements.").

2.   *Statute of Limitations Under Section 301*

Section 301 provides federal jurisdiction for "[s]uits for
violation of contracts between an employer and a labor
organization."  29 U.S.C. § 185(a).  However, it does not
establish a time limit within which an application to vacate an
arbitrator's award must be filed, so federal courts have borrowed
the analogous statute of limitations from the forum state's law.
*Local 2322, Int'l Bhd. of Elec. Workers* v. *Verizon New England,
Inc.*, 464 F.3d 93, 96-97 (1st Cir. 2006) ("The practice has
developed in labor arbitration cases of borrowing the forum
state's law to fix the limitations period for seeking judicial
review of an arbitration decision." (citing *Posadas de Puerto
Rico Assoc.* v. *Asociacion de Empleados de Casino de Puerto Rico*,
873 F.2d 479, 483 (1st Cir. 1989))).

The First Circuit has noted that the Massachusetts time
limit for an action to vacate an arbitrator's award is thirty
days.  *See id.* at 97 (noting that the "applicable state time
limit" for actions to vacate or modify an award is "thirty days
in Massachusetts," citing Mass. Gen. Laws ch. 150C § 11(b)); *see*

*generally* Mass. Gen. Laws ch. 150C § 11(b) ("An application under this section shall be made within thirty days after delivery of a copy of the award to the applicant . . . .").[2]

Here, the arbitrator's decision was handed down on January 28, 2011, and WME stipulated that it received a copy on January 31, 2011.  WME then filed its application to vacate the arbitrator's award some eighty-nine days later on April 27, 2011, well more than thirty days after it received a copy of the arbitrator's decision.  As a consequence, WME's action is untimely, and is barred by the statute of limitations.

B.   The Merits

Although WME's application to vacate the award is untimely, Local 455's motion to confirm the award is not.[3]  Accordingly, I

---

[2]   Although § 11(b) starts the thirty-day clock from the time of delivery of a copy of the award, federal courts borrowing the Massachusetts thirty-day statute of limitations have sometimes chosen to start the clock from the day the arbitrator's decision was handed down, not the date of delivery.  *See Unite Here Local 26* v. *Taj Hotel Boston*, 731 F. Supp. 2d 95, 99 n.2 (D. Mass. 2010) (noting that § 11(b) says the thirty-day window begins upon delivery, but nevertheless "some cases refer only to a 30 day period," citing, as an example, *Local 2322*, 464 F.3d at 97).  The parties' agreement regarding the date of delivery obviates the need to find facts in this case regarding the date which begins the limitations period.  That said, I see no basis to substitute the date the decision was handed down for what the relevant statute by terms prescribes---the date of delivery---as the point at which the statute of limitations commences.

[3]   As noted above, the LMRA does not contain a statute of limitations, so courts applying § 301 to confirm an arbitrator's award have adopted the most analogous state statute of limitations for such actions.  The most analogous state statute is the Massachusetts Arbitration Act, Mass. Gen. Laws ch. 150C.

turn to the merits of the award, which it bears emphasizing is a declaration without a particular remedy.

1.   *Advisory Opinion*

WME claims that the arbitrator's decision cannot be confirmed because it was an unauthorized advisory opinion.  Local 455 points to the broad scope of arbitrable subjects under Section XVI in support of the arbitrator's decision.  That section states that under the CBA, "any difference, dispute or grievance" between WME and Local 455 "regarding hours, wages, or working conditions or the interpretation or application of any of the provisions of the [CBA]" is subject to arbitration.

The broad language of the CBA supports Local 455's contention that the CBA allows for arbitrators to issue what might in other contexts be considered an advisory opinion.  Here, there was a "difference" between WME and Local 455 "regarding hours, wages, or working conditions" of WME's employees, because WME argued that it had the authority under Section IV

_____

However, as the First Circuit has recognized, that Act does not contain an explicit statute of limitations for motions to confirm an arbitrator's award.  *Derwin* v. *Gen. Dynamics Corp.*, 719 F.2d 484, 490 (1st Cir. 1983).  Instead, the First Circuit has looked to the six-year statute of limitations for contract actions from Mass. Gen. Laws ch. 260 § 2, or the twenty-year period for the enforcement of judgments from § 20, as potential analogous statutes of limitations.  *See Derwin*, 719 F.2d at 490 n.6. Because under either statute of limitations, the motion to vacate would be timely, I need not decide which one applies.

unilaterally to assign workers to help in Connecticut, and Local 455 disagreed WME had that authority.

WME points to Section IV(e)'s language that Local 455 "agrees . . . not to hinder or interfere with the management of the Employer in its several departments, including the assignment of work, [and] the direction of working forces . . ."  However, Section IV(f) states that all parts of the contract, including those in Section IV(e) are equal and "shall be subject equally to the provisions of Section XVI," the arbitration provision.  Thus, a dispute over the "assignment of work" and "the direction of working forces" is still arbitrable under Section XVI.

WME's argument fails for an additional reason: the issue of WME's authority unilaterally to require workers to go out-of-state in an emergency was not moot.  If this dispute had arisen in federal court in the first instance, rather than arbitration, the exception to the mootness doctrine for disputes that are capable of repetition, yet evade review, would apply.  *See Spencer* v. *Kemna*, 523 U.S. 1, 17 (1998) (finding that a case falls into the exception to the mootness doctrine where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again").  As the arbitrator recognized, the scenario giving rise to the difference of opinion

is one that could readily reoccur:  storms cause power outages
with some frequency, and the parties have a continuing collective
bargaining relationship with an underlying disagreement over
WME's authority unilaterally to require workers to go out-of-
state to fix power-outages.  That difference of opinion created a
sufficient dispute to allow an arbitrator to act under Section
XVI of the CBA.  I see no reason why an arbitrator operating
under a CBA that permits what in other contexts would be advisory
opinions, should be required to apply a more stringent mootness
standard than federal courts.

Much like a declaratory judgment entered by a court, the
arbitrator's determination here resolved a live and litigable
issue between the parties.  Thus, the arbitrator's decision was
not an unauthorized advisory opinion.  Rather, it was explicitly
authorized by the broad language of Section XVI itself.

   2.  *Contrary to the CBA*

WME argues that even if the difference was arbitrable, the
arbitrator's decision was contrary to the CBA because it ignored
the plain language of Section IV(e) and improperly viewed "past
practice" as conflicting with WME's decision to assign WME
employees to work in Connecticut.  WME objects that the
arbitrator improperly characterized WME's failure in the past to
exercise its power to assign workers unilaterally to deal with

emergencies outside of WME's territory, as a "past practice" that
it could not do so.

As noted above, the standard for judicial review of
arbitrators' decisions is extremely deferential. *UMass*, 527 F.3d
at 5.  My task "is to determine whether the arbitrator exceeded
his authority by failing to apply the contract in a plausible
manner." *Salem Hosp.*, 449 F.3d at 238.  Even if I were convinced
that the arbitrator was wrong, I could not overturn his decision
so long as he was "even arguably construing or applying the
contract and acting within the scope of his authority." *United
Paperworkers*, 484 U.S. at 38.

Here, I find that the arbitrator applied the CBA in a
plausible manner.  The arbitrator's opinion noted that Local
455's argument was that "that [WME] cannot unilaterally, without
negotiating with the Union, require that employees work at
entities outside of the [WME] service area."  The opinion then
described the evidence adduced by Local 455 representatives,
including examples of past projects that were negotiated, such as
the Interplant Maintenance Workforce accord and the Kent
Distribution Project.  In each example, WME and Local 455 met and
negotiated wages, hours, and working conditions for employees who
were being assigned work outside of WME's territory.  The
arbitrator thus found that there was a past practice of
negotiation and agreement in instances where WME employees were

going to be assigned to work outside of WME's districts.  The
evidence supported the arbitrator's decision, which was within
the scope of the CBA.  I therefore must confirm his decision.

    3.  *The Significance of Confirmation*

    Here, the arbitrator did not assess damages or require some
remedial action, but merely expressed an interpretation of the
then-existing CBA, which expired in 2010.  At oral argument, the
parties informed the court that the current CBA is, for all
intents and purposes, identical to the prior CBA with regard to
the issues before the arbitrator.  Thus, the motion to confirm is
not moot; but the question remains, what does Local 455 get from
confirmation?

    At oral argument, Local 455 suggested it might obtain two
benefits from confirmation: (1) the influence of a judicial
imprimatur of the award on WME, and (2) the availability of
future contempt proceedings in the event that an identical fact
pattern as the one here arose in the future, and WME acted in
direct contravention to the arbitrator's decision.  Local 455 is
correct that the former will govern interpretation of the CBA.
The later will not necessarily be available.

    Traditionally, an arbitration award that is confirmed is
treated like any other enforceable judgment of the federal
courts.  *See generally* 9 U.S.C. § 13 (noting that after
confirmation, the arbitration award "shall have the same force

and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered"). Thus, for arbitration awards involving damages, the federal court may enforce the damage award through a writ of execution, *see* FED. R. CIV. P. 69(a)(1), and a party who violates a judgment may be punished by contempt proceedings. *See, e.g.*, *Palmigiano* v. *DiPrete*, 700 F. Supp. 1180 (D.R.I. 1988) (holding defendants in civil contempt for failure to comply with consent judgment, because "[a] consent judgment is a judicial act with the same force and effect as a judgment rendered following a contested trial").

As noted above, here, however, the arbitrator did not assess any damages that can be enforced through a writ of execution, nor did the arbitrator provide Local 455 with an equitable remedy. The arbitrator's decision was in the nature of a declaratory judgment. The effect of confirmation is that it will govern interpretation of the parties' contractual relationship and it may estop the same parties from relitigating the issue by analogy to principles of res judicata and collateral estoppel. *See Action Distrib. Co.* v. *Teamsters Local 1038*, 977 F.2d 1021, 1025-26 (6th Cir. 1992) (noting that a prior arbitration award "operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies"); *but see Prod.*

19

& *Maint. Emps. Local 504* v. *Roadmaster Corp.*, 916 F.2d 1161, 1162 (7th Cir. 1990) (declining to grant estoppel effect to prior arbitration award because "[w]hether more than one arbitrator can take a crack at interpreting the contract is itself a question of contract interpretation").

Confirmation is meant to be a summary proceeding, in some ways an administrative formality, under the FAA and § 301 of the LMRA. *See, e.g., Encyclopaedia Universalis S.A.* v. *Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 89 n.2 (2d Cir. 2005); *see generally* Susan Wiens & Roger Haydock, *Confirming Arbitration Awards: Taking the Mystery out of a Summary Proceeding*, 33 Wm. Mitchell L. Rev. 1293 (2007). Thus, I need not decide whether the confirmation will have any practical effect, before, as I must, I confirm the arbitrator's award. Future disputes between the parties, if any, will determine the precise impact of the arbitrator's interpretive declaration, which I confirm in this proceeding. *See* Timothy J. Heinsz, *Grieve it Again: Of Stare Decisis, Res Judicata and Collateral Estoppel in Labor Arbitration* 38 B.C. L. Rev 275 286 (1997) (noting that "[t]he weight of legal authority has placed the deference accorded to a prior award primarily in the hands of arbitrators").

### IV. ATTORNEYS' FEES

Local 455 filed a motion for its attorneys' fees expended responding to WME's complaint. It argues that WME's attempt to

overturn the arbitrator's award was frivolous, because it was filed outside of the well-established thirty-day statute of limitations for review of an arbitrator's award.

Section 301 does not authorize attorneys' fees as an element of damages, but nevertheless courts have the equitable power to award fees in cases to enforce arbitration awards. *Aggregate Indus. N.E. Region, Inc.* v. *Teamsters Local Union No. 42*, 762 F. Supp. 2d 285, 298 (D. Mass. 2010) (quoting FAIRWEATHER'S PRACTICE & PROCEDURE IN LABOR ARBITRATION 641).

Under that equitable power, developed by federal common law, "a court may award fees and costs to the winning party in a section 301 action if the losing party's position was 'frivolous, unreasonable, or without foundation.'" *Local 2322*, 464 F.3d at 100 (citation omitted). Here, as noted above, it was clear that the statute of limitations barred WME's claims. Therefore, its suit was frivolous, and attorneys' fees may be awarded to Local 455.

However, although I would otherwise be inclined to award attorneys' fees to Local 455 for WME's frivolous belated effort to vacate the award, Local 455 has failed to provide sufficient evidence upon which such an award could be granted.

In its motion, Local 455 requested costs in the amount of either $400 per hour (opposing counsel's rate), or $150 per hour (the rate actually charged by Local 455's counsel), for 58 total

21

hours of work broken down primarily into multiple-hour chunks undocumented by contemporaneous time records.  That is an insufficient foundation to meet Local 455's burden of proof on the reasonableness of its rates.  To be entitled to an award of attorneys' fees, Local 455 must make some showing at a minimum through affidavits "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum* v. *Stenson*, 465 U.S. 886, 895 n.11 (1984); *see Bordanaro* v. *McLeod*, 871 F.2d 1151, 1168 (1st Cir. 1989) (remanding a fee award because plaintiffs "produced no evidence that would establish the prevailing rate for comparable legal services other than their own attorneys' affidavits" and thus they "failed to carry their burden of proving the prevailing market rate").  Moreover, the showing must be supported by contemporaneous time records and make it possible to distinguish between work compensable by attorneys' fees (here, opposing the frivolous, belated effort to vacate the arbitration award) and work not compensable by an attorneys' fee award (here, affirmatively seeking confirmation of the arbitration award).

Thus, although Local 455 may have been entitled to fees for WME's frivolously belated complaint to vacate the award, I will deny its motion because it failed to provide a sufficient evidentiary basis for any award to which it might be entitled.

22

## V. CONCLUSION

For the reasons set forth above, I (1) DENY WME's motion for summary judgment (Dkt. No. 18); (2) GRANT Local 455's motion for summary judgment (Dkt. No. 16); but DENY so much of Local 455's motion as seeks attorneys' fees.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE